**SEDGWICK LLP**
Marilyn Klinger (State Bar No.83508)
marilyn.klinger@sedgwicklaw.com
Robert Shaffer (State Bar No.155182)
robert.shaffer@sedgwicklaw.com
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556
Telephone: 213.426.6900
Facsimile: 213.426.6921

Attorneys for Plaintiff
GREAT AMERICAN INSURANCE COMPANY

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* <br><br> RAMIN EMAMI, <br><br> Debtor. | **[CONSOLIDATED CASES]** <br><br> **Adversary Case No.: 2:13-ap-02149-ER and** <br> **Advsersary CaseNo.: 2:14-ap-01172-VZ** <br><br> **CHAPTER 7** <br><br> **GREAT AMERICAN INSURANCE COMPANY'S FIRST AMENDED COMPLAINT OBJECTING TO DISCHARGE OF THE DEBTOR AND TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS AGAINST DEBTOR RAMIN EMAMI** |
| GREAT AMERICAN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> RAMIN EMAMI, an individual, <br><br> Defendant. | |
| GREAT AMERICAN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> VICKI ANN EMAMI, an individual, <br><br> Defendant. | |

1

19241227v3

Pursuant to 11 U.S.C. §§ 523(a) and 727(a), Plaintiff GREAT AMERICAN INSURANCE COMPANY, a creditor in the above-referenced bankruptcy proceedings, hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1. The United States District Court for the Central District of California has jurisdiction over this adversarial proceeding under 28 U.S.C. sections 157(b) 1334. This is a core proceeding as defined in 28 U.S.C sections 157(b)(2)(I) and (J). Venue of this adversary proceeding in this Court is proper under 28 U.S.C. section 1409(a).

## THE PARTIES

2. Great American Insurance Company ("Great American") is and at all relevant times was, a corporation organized under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio. Great American is qualified to conduct and does conduct business as a surety in the State of California.

3. Great American is informed and believes, and on that basis alleges, that Debtor Ramin Emami is and at all times mentioned in this complaint was, an individual residing and doing business in Los Angeles County, California, and is a citizen of the State of California.

## GENERAL ALLEGATIONS

4. Great American is informed and believes that, at all relevant times, Debtor was an officer and shareholder of Delmac Construction & Development Inc., ("Delmac").

5. Great American is informed and believes that, at all relevant times, Debtor was the managing member and owner of Shahcool, LLC, ("Shahcool").

6. Great American is in the business of providing surety bonds on behalf of construction companies.

7. On or about May 9, 2008, Delmac, as Prinicpal, and Debtor, Debtor's

spouse, Vicki A. Emami, and Shahcool, as Indemnitors (collectively, the "Indemnitors"), entered into an "Agreement of Indemnity" ("Indemnity Agreement") with Great American, as Surety. A true and correct copy of the Indemnity Agreement is attached to this Complaint as Exhibit 1, and incorporated by reference herein in its entirety.

8. Pursuant to the Indemnity Agreement, the Indemnitors agreed to, among other things, indemnify Great American against all liability, losses, and expenses of any kind that Great American may sustain by reason of having executed surety bonds on behalf of Delmac.

9. At the request of Delmac and in consideration of the Indemnity Agreement, Great American, as surety, executed certain performance, payment and license bonds on behalf of Delmac. Collectively, all performance, payment and license bonds issued by the Great American will be referred to as the "Bonds" and all projects for which Great American has issued the Bonds will be referred to as the "Bonded Projects."

10. On or about April 30, 2011, Debtor provided Great American with a personal financial statement identifying and representing the amount of real property owned. The financial statement identified four separate properties, totaling a market value of $4,220,000.00, with mortgage payments due in the amount of $1,302,000.00 ("Financial Statement"). Debtor presented this Financial Statement to Great American with the intent that Great American rely on the representations made in the financial statement. A true and correct copy of the Financial Statement is attached hereto as Exhibit 2.

11. In reliance on and pursuant to the representations of Debtor, Great American did and continued to issue surety bonds on behalf of Delmac with the assurance that the Indemnitors, and Debtor in particular, held substantial collateral and assets.

12. Thereafter, Delmac defaulted on several of the Bonds and on several

3

19241227v3

Main Document    Page 4 of 20

of the Bonded Projects. Delmac failed to complete certain of the Bonded Projects and/or failed to pay its subcontractors and suppliers.

13. As a result of the defaults by Delmac, liability has been asserted against Great American under the Bonds and Great American incurred and continues to incur losses and expenses as a result of the claims on the Bonds.

14. In or about December 2011 Great American received notification on the Rose Bowl project that Delmac was in default under the terms of the Bonded Contract. The Rose Bowl demanded that Great American provide written confirmation that Great American would arrange for completion of Delmac's Contract, pursuant to the Performance Bond. On or about January 24, 2012, the Rose Bowl terminated Delmac's performance of the Contract for cause.

15. Beginning in 2012, Great American began receiving numerous other claims and lawsuits against the Bonds. Delmac defaulted on most of the Bonds and on most of the Bonded Projects and ceased doing business in or about May 2012. Delmac admits it failed to complete certain Bonded Projects and/or failed to pay all of its subcontractors and suppliers on certain Bonded Projects. As a result of the defaults by Delmac, liability was asserted against Great American under Bonds.

16. The Rose Bowl's default and termination of Delmac, as well as the numerous claims and lawsuits that Great American was receiving, placed Delmac and the other Indemnitors, including Debtor, in default under the terms of the Indemnity Agreement. In anticipation of the losses it was incurring and expected to incur, in or about March 2012 Great American made a written demand on Delmac, Debtor, and the Indemnitors to reimburse, indemnify and to save Great American harmless from liability and potential liability and to post cash collateral in the amount of $1,500,000. Debtor and the Indemnitors failed and refused to remit collateral as requested in the Collateral Demand.

///

19241227v3

17. Since the Collateral Demand was made, Great American incurred losses to settle and discharge its potential liability under the Bonds in the amount of $6,014,459.31 and costs and expenses in the amount of $534,680.30, for a total of $6,549,139.61. To date, Great American has received payment of contract funds on the Bonded Contracts through August 2013 in the total sum of $295,009.16. Great American has not received any payment from Delmac, Debtor, or the other Indemnitors. Accordingly, Great American's net losses as of August 2013 totaled $6,254,130.45.

18. Great American satisfied all the conditions precedent under the terms of the Indemnity Agreement prior to initiating legal proceedings against the Indemnitors.

19. On or about October 30, 2012, Great American filed a complaint against Delmac, Debtor and the other Indemnitors for, among other things, breach of the Indemnity Agreement, express contractual indemnity and statutory reimbursement. *See Great American Insurance Company v. Delmac Construction and Development, Inc., et al.,* United States District Court, Central District of California, Case No. CV12-09305 DSF (VBKx).

20. Great American filed a motion for partial summary judgment and on or about September 4, 2013, the Hon. Dale S. Fisher, granted the partial summary judgment in favor of Great American, in the amount of $6,254,130.45 ("Order"). A true and correct copy of the order is attached hereto and incorporated herein by this reference as Exhibit 3.

21. Debtor and the Indemnitors refused and failed to pay and/or satisfy this judgment.

22. By virtue of issuing the Bonds, and pursuant to *Pearlman v. Reliance Ins.Co.*, 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), and its progeny, Great American has equitable liens against all of the contract proceeds from the Bonded Projects ("Proceeds") which relate back to the time the Bonds were executed, to the extent of its losses under the Bonds.

5

19241227v3

23. Great American's equitable lien on the Proceeds is superior to Delmac's right or the Debtor's right to use these Proceeds. *Pearlman; In re Fegert, Inc.*, 887 F.2d 955, 958 (9th Cir. 1989).

24. Further, the Indemnity Agreement provides that the Proceeds were to be held in trust for Great American:

**TRUST FUNDS**

FOURTH Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement …

25. Upon information and belief, Debtor received funds from obligees named in the Great American bonds pursuant to the contracts which the Bonds guaranteed, which funds constitute the trust corpus under the trust created in the Indemnity Agreement (the "Trust Funds") wherein Great American is the beneficiary.

26. Great American is informed and believes, based on a review of bank records of Delmac and Debtor, that, in 2011 and 2012, approximately $5,700,000.00 in funds were received from obligees named in the Great American Bonds and were to be held as Trust Funds.

27. Great American is informed and believes that one cause of its loss was Debtor's intentional mismanagement of Delmac including, without limitation, misappropriation and embezzlement of the Trust Funds and Proceeds for the personal benefit of Debtor.

28. Beginning in or about November 2011 and December 2011, and continuing thereafter, Great American met with the Debtor, and communicated by telephone, email and correspondence with the Debtor, on numerous occasions to discuss, among other things, the receipt by Delmac and the Debtor of the Trust

19241227v3

Funds from obligees on the Bonded Projects. During these meetings and communications, the Debtor acknowledged to Great American his understanding that the Trust Funds were to be used by Delmac and Debtor to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects. Debtor's understanding of this obligation is consistent with Debtor's prior practice of paying expenses incurred on Bonded Projects upon receipt of the Trust Funds. Debtor's understanding is evidenced, in part, by the fact that Great American did not receive any claims for non-payment by subcontractors, laborers and/or materialmen prior to January 2012.

29. Further, as a part of the meetings and communications between Great American and the Debtor beginning in or about November 2011 and December 2011, Debtor acknowledged verbally to Great American that Debtor understood that any failure on the part of Delmac and Debtor to use the Trust Funds to pay subcontractors, suppliers, and other expenses on Bonded Projects would result in default on the Bonds and would require payment by Great American pursuant to the Bonds thereby inflicting injury and damage on Great American. Debtor further acknowledged to Great American his understanding that he would be obligated to reimburse Great American for any damage sustained as a result of the failure to use the Trust Funds for their intended purpose.

30. Despite Debtor's acknowledgment of his understanding of the purpose and intent of the Trust Funds, and the ramifications and damage that would occur to Great American if the Trust Funds were not used for their intended purpose, Debtor misappropriated and embezzled Delmac's assets including the Trust Funds, failed to pay Delmac's subcontractors, laborers and materialmen and defaulted on the Bonded Projects, resulting in the losses suffered by Great American.

31. Great American is informed and believes that Debtor used the Trust Funds and Proceeds to pay for expenses that were not expenses associated with the Bonded Projects. Based on a review of bank records of Delmac and Debtor,

beginning in 2011, and continuing after Debtor's acknowledgement of the intended purpose of the Trust Funds, Great American is informed and believes that Debtor made numerous withdrawals and transfers, to himself, of at least $1,800,000.00 of the Trust Funds. Additional withdrawals and transfers by Debtor demonstrate that approximately $3,200,000.00 in Trust Funds were used to pay expenses that were not related to the Bonded Projects.

32. Further, beginning in or about 2012 Delmac, Debtor and Great American issued Letters of Direction to obligees of the Bonds directing the obligees to direct future payments on the Bonded Projects to Great American for purposes of paying expenses on the Bonded Projects.

33. Based on a review of the bank records of Delmac and Debtor, Great American is informed and believes that, after the Letters of Direction were mailed to the obligees, Delmac received payment from certain obligees and, rather than forwarding the payment to Great American or using the payment for expenses on the Bonded Projects, Debtor withdrew and transferred such Trust Funds to himself and used the Trust Funds to pay expenses that were not related to the Bonded Projects.

## FIRST CAUSE OF ACTION
## (11 U.S.C. Section 523(a)(4))

34. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-33 above as though fully set forth herein.

35. Debtor executed the Indemnity Agreement thereby agreeing to indemnify and hold Great American harmless for all losses and expenses incurred as a consequence of having issued surety bonds on behalf of Delmac.

36. Debtor was the President of Delmac. Debtor and his spouse, V. Emami, were the sole shareholders of Delmac, were extremely active in Delmac, and controlled the day-to-day activities of Delmac. Debtor and his spouse, V. Emami had sole and exclusive control of all funds received by Delmac and all

19241227v3

funds paid out by Delmac, including the Trust Funds.

37. As set forth above, in meetings and communications between Great American and Debtor, Debtor acknowledged to Great American his understanding of the purpose and intent of the Trust Funds, as well as the damage that would be sustained by Great American if the Trust Funds were not used to pay expenses on Bonded Projects. Debtor's acknowledgement was consistent with his prior custom and practice of using the Trust Funds to pay expenses on Bonded Projects. This custom and practice is evidenced, in part, by the fact that from 2008 through 2011 Great American did not receive or pay any claims on projects bonded by Great American.

38. Despite Debtor's acknowledgment and understanding of the purpose and intent of the Trust Funds, and despite Debtor's prior custom and practice of using the Trust Funds to pay expenses on Bonded Projects, based on a review of bank records of Delmac and Debtor, beginning in or about 2011, and continuing thereafter, Great American is informed and believes that Debtor made numerous withdrawals and transfers, to himself, of at least $1,800,000.00 of the Trust Funds. Additional withdrawals and transfers by Debtor demonstrate that approximately $3,200,000.00 in Trust Funds were used to pay expenses that were not related to the Bonded Projects.

39. Debtor's withdrawal and transfer of at least $1,800,000.00 of the Trust Funds to himself during a period of less than eighteen months is grossly inconsistent with his prior use. Based on a review of bank records of Delmac and Debtor, Great American is informed and believes that Debtor's previous draws for salary did not exceed $10,000.00 per month. In Debtor's Schedules and Statement of Financial Affairs, Debtor reported his income as $90,000.00 in 2011 and $80,000.00 in 2012.

40. Debtor's use of approximately $3,200,000.00 in Trust funds to pay expenses that were not related to the Bonded Projects is also grossly inconsistent

19241227v3

with Debtor's prior use and understanding of the purpose of the Trust Funds. During meetings and communications between Debtor and Great American beginning in November 2011 and continuing thereafter, Debtor verbally acknowledged to Great American his prior use and understanding of the Trust Funds to pay expenses on Bonded Projects. Debtor's acknowledgment and prior use and understanding is consistent with the fact that from approximately 2008 through 2011 Debtor consistently paid expenses from Bonded Projects with the Trust Funds as evidenced by the fact that Great American did not receive or pay any claims on projects bonded by Great American during that time period, as well as Great American's review of review of bank records of Delmac and Debtor.

41. Given Debtor's prior acknowledgment of the ramifications and damages that would be sustained by Great American if the Trust Funds were not used to pay expenses on Bonded Projects, Debtor's withdrawal and transfer of the Trust Funds to himself, as well as his use of the Trust Funds to pay expenses not related to the Bonded Projects, was done in conscious disregard of his known obligations for use of the Trust Funds. Debtor's withdrawal and transfer of the Trust Funds to himself, as well as his use of the Trust Funds to pay expenses not related to the Bonded Projects, was intentional and meant to cause injury and damage to Great American.

42. In light of Debtor's acknowledgment to Great American of his understanding of the purpose and intent of the Trust Funds, as well as his acknowledgment to Great American of the ramifications and damages that would be sustained by Great American if the Trust Funds were not used to pay expenses on the Bonded Projects, Debtor's withdrawal and transfer of the Trust Funds to himself, as well as his use of the Trust Funds to pay expenses not related to the Bonded Projects, was reckless and grossly inconsistent with prior use and practice. Debtor's conduct constitutes a conscious disregard for the substantial and unjustifiable risk of violating his fiduciary duty as trustee of the Trust Funds.

19241227v3

Debtor's disregard of the obligation to use the Trust Funds for their intended purpose is a gross deviation from conduct that a law-abiding person would observe in Debtor's situation.

43. Upon information and belief, Debtor, with the intent to defraud Great American, and other creditors, embezzled assets of Delmac, including but not limited to, the Trust Funds, Proceeds, clients, trucks and equipment, and used these assets for purposes other than paying expenses related to the Bonded Projects, including matters benefiting Debtor personally.

44. Upon information and belief, and in the alternative, Debtor, with the intent to convert such assets, obtained assets of Delmac, including but not limited to the Trust Funds, Proceeds, clients, trucks and equipment, through larceny, and used the assets for purposes other than paying expenses related to the Bonded Projects including matters benefitting Debtor personally.

45. Having received Trust Funds, Debtor owed Great American fiduciary duties as trustee and was and is obligated to discharge his fiduciary duties to Great American pursuant to the terms of the Indemnity Agreement and applicable law and equity.

46. Upon information and belief, Debtor breached his fiduciary duties to Great American pursuant to the Indemnity Agreement and applicable law and equity.

47. Upon information and belief, Debtor breached his fiduciary duties to Great American by obtaining the Trust Funds and assets of Delmac, by defalcation, and failing to use the Trust Funds and assets to discharge the obligations for which Great American is liable under the Bonds.

48. Despite demand, Debtor breached his fiduciary duties to Great American by failing to account to Great American for the disposition of the Trust Funds.

11

19241227v3

49. On information and belief, Debtor and Indemnitors also breached their fiduciary duties to Great American by failing to act with the utmost good faith towards Great American.

50. As a direct and proximate cause of Debtor's breaches of trust, fraud and defalcation while acting in a fiduciary capacity, embezzlement, and larceny, Debtor is liable to Great American for damages in the amount of $6,254,130.45, as set forth in the Order, plus interest thereon at the maximum legal rate.

51. Debtor's conduct, as alleged herein, renders this debt to Great American, non-dischargeable pursuant to 11 U.S.C. section 523(a)(4).

## SECOND CAUSE OF ACTION
## (11 U.S.C. Section 523(a)(6))

52. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-51 above as though fully set forth herein.

53. In reliance on and pursuant to the representations of the Financial Statement, Great American did and continued to issue surety bonds on behalf of Delmac with the assurance that the Indemnitors, and Debtor in particular, held substantial collateral.

54. Upon information and belief, the Financial Statement represented that Debtor owned the real property identified therein (the "Property"). Debtor has failed to list the Property or otherwise account for same in the Declaration Concerning Debtor's Schedules, Statement of Affairs.

55. Within one year of filing his petition for bankruptcy, Debtor caused the Property listed in the Financial Statement to be transferred.

56. Upon information and belief, Debtor transferred the Property for substantially less than reasonably equivalent value in an attempt to defraud, hinder and delay creditors, such as Great American.

57. Upon information and belief, Debtor transferred the Property for substantially less than reasonably equivalent value, which rendered him insolvent,

12

19241227v3

and unable to conduct business and/or pay his debts.

58. Upon information and belief, Debtor's transfer of the Property for substantially less than reasonably equivalent value, was for the sole purpose of defrauding creditors, including Great American.

59. As set forth above, in meetings and communications between Great American and Debtor, Debtor acknowledged to Great American his understanding of the purpose and intent of the Trust Funds, as well as the damage that would be sustained by Great American if the Trust Funds were not used to pay expenses on Bonded Projects. Debtor's acknowledgement was consistent with his prior custom and practice of using the Trust Funds to pay expenses on Bonded Projects. This custom and practice is evidenced, in part, by the fact that from 2008 through 2011 Great American did not receive or pay any claims on projects bonded by Great American.

60. Despite Debtor's acknowledgment and understanding of the purpose and intent of the Trust Funds, based on a review of bank records of Delmac and Debtor, beginning in or about 2011, and continuing thereafter, Great American is informed and believes that Debtor made numerous withdrawals and transfers, to himself, of at least $1,800,000.00 of the Trust Funds. Additional withdrawals and transfers by Debtor demonstrate that approximately $3,200,000.00 in Trust Funds were used to pay expenses that were not related to the Bonded Projects.

61. In light of Debtor's acknowledgment to Great American of his understanding of the purpose and intent of the Trust Funds, as well as his acknowledgment to Great American of the ramifications and damages that would be sustained by Great American if the Trust Funds were not used to pay expenses on the Bonded Projects, Debtor's withdrawal and transfer of the Trust Funds to himself, as well as his use of the Trust Funds to pay expenses not related to the Bonded Projects, was willful, malicious, and done with the specific intent to cause injury and damage to Great American.

19241227v3

62. Upon information and belief, Debtor willfully and maliciously injured Great American's property by the breach of fiduciary duties described in the preceding paragraphs, and by fraudulently transferring assets, rendering Debtor insolvent, to shield such assets from the bankruptcy and defraud creditors such as Great American.

63. The conduct described herein renders Debtor's debt to Great American non-dischargeable pursuant to 11 U.S.C. section 523(a)(6).

### THIRD CAUSE OF ACTION

### (11 U.S.C. Section 523(a)(2))

64. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-63 above as though fully set forth herein.

65. Pursuant to the Indemnity Agreement, Debtor agreed to hold and properly use the Trust Funds and Proceeds, to use all Trust Funds and Proceeds for the Bonded Project obligations and to hold the Trust Funds and Proceeds in trust. Debtor falsely represented to Great American when he entered into the Indemnity Agreement, and again in 2011, that he understood the nature and purpose of the Trust funds and agreed that the Trust Funds would be used to pay expenses on Bonded Projects.

66. Great American entered into the Indemnity Agreement and issued the Bonds in good faith and in reliance on the representations by the Debtor to properly use the Trust Funds and Proceeds, to use all Trust Funds and Proceeds for the Bonded Project obligations and to hold the Trust Funds and Proceeds in trust. Great American performed its obligations pursuant to the Indemnity Agreement in full.

67. Beginning in or about November 2011 and December 2011, and continuing thereafter, Great American met with the Debtor, and communicated by telephone, email and correspondence with the Debtor, on numerous occasions to discuss, among other things, the receipt by Delmac and the Debtor of the Trust

19241227v3

Funds from obligees on the Bonded Projects. During these meetings and communications, the Debtor acknowledged to Great American his understanding that the Trust Funds were to be used by Delmac and Debtor to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects.

68. During these meetings and communications, the Debtor acknowledged to Great American his understanding that the Trust Funds were to be used by Delmac and Debtor to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects. Debtor represented to Great American during these meetings and communications that all Trust Funds received would be used by Delmac and Debtor to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects.

69. Great American is informed and believes that despite these representations, Debtor had no intention to properly use the Trust Funds and Proceeds, to use all Trust Funds and Proceeds for the Bonded Project obligations and to hold the Trust Funds and Proceeds in trust.

70. Based on a review of bank records of Delmac and Debtor, beginning in or about 2011, and continuing after Debtor's representation that the Trust Funds would be used to pay expenses incurred on Bonded Projects, Great American is informed and believes that Debtor made numerous withdrawals and transfers, to himself, of at least $1,800,000.00 of the Trust Funds. Additional withdrawals and transfers by Debtor demonstrate that approximately $3,200,000.00 in Trust Funds were used to pay expenses that were not related to the Bonded Projects.

71. Upon information and belief, Debtor and his wife, V. Emami, made a knowing and willful decision to conspire and use the Trust Funds and Proceeds for their personal expenses and other non-project uses.

19241227v3

72. Great American reasonably relied on Debtor's representations that he was entering into the Indemnity Agreement in good faith, and that he (a) had read the entire Indemnity Agreement, (b) agreed with all of its provisions, (c) intended to abide by it in its entirety, (d) entered into it voluntarily; (e) agreed to properly use the Trust Funds and Proceeds, (f) agreed to use all Trust Funds and Proceeds for the Bonded Project obligations, and (g) agreed to hold the Trust Funds and Proceeds in trust.

73. Had Great American known that Debtor did not intend to abide by the terms of the Indemnity Agreement or his representations regarding the use of the Trust Funds, did not intend to properly use the Trust Funds and Proceeds, did not intend to use all Trust Funds and Proceeds for the Bonded Project obligations, and did not intend to hold the Trust Funds and Proceeds in trust, Great American would not have entered into the Indemnity Agreement with Debtor, would not have issued the Bonds resulting in Great American's losses and would not have allowed Debtor to take possession of and/or control the Trust Funds.

74. Debtor's conduct at the time that he entered into the Indemnity Agreement with Great American and at the time the representations regarding use of the Trust Funds were made, constitutes false pretenses and/or false representations, which Debtor knew to be false and/or which Debtor made with reckless disregard as to their truth or falsity.

75. The Debtor's diversion of the Trust Funds and Proceeds was hidden. Based upon the amount of claims and losses experienced by Great American, it is informed that Debtor embezzled, defalcated, misappropriated, converted or diverted a sum, subject to proof, in funds such that they were not used to pay expenses related to the Bonded Projects, but personal and other non-project expenses.

76. The conduct described herein renders Debtor's debt to Great American non-dischargeable pursuant to 11 U.S.C. section 523(a)(2).

19241227v3

# FOURTH CAUSE OF ACTION
## (11 U.S.C. SECTION 727(a)(4)(A)

77. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-76 above as though fully set forth herein.

78. On or about the petition date Debtor signed his Schedules and Statement of Financial Affairs.

79. Within the Bankruptcy Case Debtor gave sworn testimony at his Bankruptcy Code § 341(a) Meeting of Creditors.

80. Based on a review of Debtor's bank records and other information, Great American is informed and believes that Debtor's Schedules and Statement of Financial Affairs contain inaccurate and false information including, but not limited to, the following:

    a. That Debtor transferred property located at 4050 North Verdugo Road, Los Angeles, CA to his ex-wife, Mai Emami that was valued at $275,000.00 for no consideration other than assumption of a loan equal to $275,000.00. In fact, the property in question was owned by Shahcool LLC and was listed for sale at $450,000.00. Further, the transferee, Mai Emami, asserts that the property was transferred to her in exchange for discharge of loans made by her to the Debtor of at least $50,000.00, in addition to assumption of a first mortgage in the amount of $271,000.00.

    b. That the Schedules and Statement of Financial Affairs identify all bank accounts of the Debtor. In fact, Debtor had additional bank accounts at East West Bank and U.S. Bank that were not disclosed by Debtor. A review of the bank records for these accounts indicates substantial funds were transferred into and out of these accounts by Debtor and

19241227v3

such accounts and funds were not identified on Debtor's Schedules and Statement of Financial Affairs, including Schedule B.

  c. That a substantial amount of debts listed on Schedules D, E and F are, in reality, the debts of Delmac, or other entities controlled by Debtor, that are not guaranteed by the Debtor and not the debts of the Debtor.  The Debtor has deliberately manipulated the Schedules to make it appear as though the debts are primarily business debts in order to qualify for Chapter 7 discharge, when in reality the actual debts are consumer in nature.

81. In connection with the Bankruptcy Case the Debtor filed materially incomplete, false and misleading sworn Schedules and Statements of Financial Affairs and provided materially incomplete, false and misleading sworn testimony at the Meeting of Creditors.

82. Pursuant to 11 U.S.C. section 727(a)(4)(A) the Debtor should be denied a discharge.

## **FIFTH CAUSE OF ACTION**
## **(11 U.S.C. SECTION 727(a)(2)(A)**

83. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-82 above as though fully set forth herein.

84. Within one year of the Petition Date, Debtor, with intent to hinder, delay or defraud creditors, including Great American, transferred, removed, destroyed, concealed, or permitted the transfer, removal, destruction, or concealment of property of the Debtor.

85. Debtor, and his spouse, V. Emami, were the sole shareholders of Delmac.

86. Based on a review of bank records of Delmac and Debtor, beginning

Case 2:13-ap-02149-ER    Doc 43    Filed 08/14/14    Entered 08/14/14 15:35:14    Desc
Main Document    Page 19 of 20

in or about 2011, and continuing thereafter, Great American is informed and believes that Debtor made numerous withdrawals and transfers, to himself, of at least $1,800,000.00 of the Trust Funds. Additional withdrawals and transfers by Debtor demonstrate that approximately $3,200,000.00 in Trust Funds was used to pay unidentified transferees.

87. Great American is informed and believes that the Debtor's transfer, removal, destruction, or concealment of the property of the Debtors within one year of the Petition Date was done with intent to hinder, delay, or defraud creditors of the estate, including Great American.

88. Pursuant to 11 U.S.C. § 727(a)(2)(A) the Debtor should be denied a discharge.

## SIXTH CAUSE OF ACTION
## (11 U.S.C. SECTION 727(a)(5)

89. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-88 above as though fully set forth herein.

90. Based on a review of bank records of Delmac and Debtor, beginning in or about 2011, and continuing thereafter, Great American is informed and believes that Debtor made numerous withdrawals and transfers, to himself, of at least $1,800,000.00 of the Trust Funds. Additional withdrawals and transfers by Debtor demonstrate that approximately $3,200,000.00 in Trust Funds was used to pay unidentified transferees.

91. Great American is informed and believes that there exist other assets lost that the Debtor cannot satisfactorily explain.

92. The Debtor has not satisfactorily explained the loss of the assets.

93. Pursuant to 11 U.S.C. § 727(a)(5) the Debtor should be denied a discharge.

19241227v3

## **PRAYER**

1. Wherefore, Great American prays for judgment as follows:

2. For a declaration and determination that the obligation of Great American is non-dischargeable under 11 U.S.C. section 523(a)(2), (4) and (6);

3. That Debtor be denied a discharge pursuant to one or more subsections of 11 U.S.C § 727(a).

4. That a nondischargeable Judgment be issued in favor of Great American and against the Debtor for the amount of the debt owed pursuant to the Court's Order in the amount of $6,254,130.45, together with interest thereon at the maximum legal rate.

5. For reasonable costs and attorney's fees;

For such other relief as the Court deems just and proper.


DATED: August 14, 2014         SEDGWICK LLP


                               By: */s/ Marilyn Klinger*
                                   Marilyn Klinger
                                   Robert H. Shaffer
                                   Attorneys for Plaintiff
                                   GREAT AMERICAN INSURANCE COMPANY

19241227v3