Robert J. Berens (CA Bar No. 0141647)
**LANGLEY LLP**
2001 E. Campbell Ave., Suite 203
Phoenix, Arizona 85016
Telephone: (602) 428-7339
Facsimile: (602) 795-6077
E-mail: rberens@l-llp.com

*Attorneys for Creditor Great American Insurance Co.*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | **[CONSOLIDATED CASES]** |
| RAMIN EMAMI, | **Adversary Case No. 2:13-ap-02149-ER and** |
| Debtors. | **Adversary Case No. 2:14-ap-01172-VZ** |
| | **Chapter 7** |
| GREAT AMERICAN INSURANCE COMPANY, | **GREAT AMERICAN INSURANCE COMPANY'S SECOND AMENDED COMPLAINT AGAINST VICKI EMAMI TO DENY DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), (a)(4) AND (a)(6)** |
| Plaintiff, | |
| v. | |
| RAMIN EMAMI, an individual, | |
| Defendant. | |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | |
| VICKI EMAMI, an individual, | |
| Defendant. | |

Pursuant to 11 U.S.C. § 523(a), Plaintiff GREAT AMERICAN INSURANCE COMPANY, a creditor in the above-referenced bankruptcy proceedings, hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Central District of California has jurisdiction over this adversarial proceeding under 28 U.S.C. §§ 157(b) 1334. This is a core proceeding as defined in 28 U.S.C §§ 157(b)(2)(I) and (J). Venue of this adversary proceeding in this Court is proper under 28 U.S.C. § 1409(a).

## THE PARTIES

2. Great American Insurance Company ("Great American") is and at all relevant times was, a corporation organized under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio. Great American is qualified to conduct and does conduct business as a surety in the State of California.

3. Great American is informed and believes, and on that basis alleges, that Debtor Vicki Emami ("Ms. Emami") is and at all times mentioned in this complaint was, an individual residing and doing business in Los Angeles County, California, is a citizen of the State of California and is married to Ramin Emami ("Mr. Emami").

## GENERAL ALLEGATIONS

4. Great American is informed and believes that, at all relevant times, Ms. Emami was an officer and shareholder of Delmac Construction & Development Inc., ("Delmac").

5. Great American is informed and believes that, at all relevant times, Ms. Emami was a managing member and owner of Shahcool, LLC, ("Shahcool").

6. Great American is in the business of providing surety bonds on behalf of construction companies.

7. On or about May 9, 2008, Delmac, as Principal, Ms. Emami, Ms. Emami's spouse Mr. Emami, and Shahcool, as Indemnitors (collectively, the "Indemnitors"), entered into an *Agreement of Indemnity* ("Indemnity Agreement") with Great American, as

2

Surety. A true and correct copy of the Indemnity Agreement is attached to this Complaint as <u>Exhibit "1"</u>, and incorporated herein by reference in its entirety.

8. Pursuant to the SECOND paragraph of the Indemnity Agreement, the Indemnitors, including Ms. Emami, agreed to, among other things, indemnify Great American against all liability, losses, and expenses of any kind that Great American may sustain by reason of having executed surety bonds on behalf of Delmac, including amounts paid to claimants, and attorneys' fees and costs incurred to investigate and adjust claims, as follows:

> The Undersigned, jointly and severally, shall exonerate, indemnify, hold harmless, and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature . . . and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having requested to execute or procure, or having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement.

*See* Exhibit "1."

9. From time to time after the execution of the Indemnity Agreement on May 9, 2008, Delmac and/or the Indemnitors requested that Great American, as surety, execute certain performance, payment and license bonds on behalf of Delmac, which Great American issued in consideration of, and in reliance upon, the promises contained in the Indemnity Agreement. Collectively, all performance, payment and license bonds issued by Great American will be referred to as the "<u>Bonds</u>" and all projects for which Great American has issued the Bonds will be referred to as the "<u>Bonded Projects</u>."

10. In 2011, Delmac began to default on several of the Bonds and on several of the Bonded Projects. Delmac failed to complete certain of the Bonded Projects and/or failed to pay its subcontractors and suppliers.

11. As a result of the defaults by Delmac, liability was asserted against Great American under the Bonds and Great American incurred and continues to incur losses and expenses as a result of the claims on the Bonds.

12. As of May 18, 2015, Great American incurred losses to settle and discharge its potential liability under the Bonds in the amount of $6,854,056 and costs and expenses in the amount of $1,000,037, for a total of $7,854,093.00. Great American has received payment of contract funds on the Bonded Contracts through May 18, 2015 in the total sum of $295,009.16. Great American has not received any payment from Delmac, Ms. Emami, or the other Indemnitors. Accordingly, Great American's net losses as of May 18, 2015 totaled $7,559,083.84. Great American continues to incur loss, costs and expenses and, upon information and belief, is exposed to additional loss, costs and expenses under its Bonds.

13. On or about October 30, 2012, Great American filed a complaint against Delmac, Ms. Emami and the other Indemnitors for, among other things, breach of the Indemnity Agreement, express contractual indemnity and statutory reimbursement. *See Great American Insurance Company v. Delmac Construction and Development, Inc., et al.*, United States District Court, Central District of California, Case No. CV12-09305 DSF (VBKx).

14. Great American filed a motion for partial summary judgment and on or about September 4, 2013, the Hon. Dale S. Fisher, granted the partial summary judgment motion in favor of Great American, in the amount of $6,254,130.45 ("Summary Judgment Order"). A true and correct copy of the Summary Judgment Order is attached hereto and incorporated herein by this reference as Exhibit "2."

15. By virtue of issuing the Bonds, and pursuant to *Pearlman v. Reliance Ins.Co.*, 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), and its progeny, Great American had and has equitable liens against all of the contract proceeds that would be paid to Delmac from the Bonded Projects ("Bonded Proceeds"), which relate back to the time the Bonds were executed, to the extent of Great American's losses under the Bonds.

16. Great American's equitable lien on the Bonded Proceeds is superior to Delmac's right or Ms. Emami's right to use these Bonded Proceeds. *Pearlman*; *In re Fegert, Inc.*, 887 F.2d 955, 958 (9th Cir. 1989).

17. In addition to Great American's equitable lien rights to the Bonded Proceeds, the Indemnitors also agreed in the FOURTH paragraph of the Indemnity Agreement that the Bonded Proceeds were to be held in trust for Great American's benefit, as follows:

### TRUST FUNDS

> FOURTH Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement …

*See* Exhibit "1."

18. Upon information and belief, one cause of Great American's loss was Ms. Emami and/or Mr. Emami intentionally mismanaging Delmac, including, but not limited to, misappropriation and embezzlement of the Bonded Proceeds such that the Bonded Proceeds were diverted from Delmac and away from Delmac's bonded obligations, for the personal benefit of Ms. Emami and/or Mr. Emami.

19. Upon information and belief, beginning in January 2011, Ms. Emami and/or Mr. Emami began causing Delmac assets, including Bonded Proceeds from Bonded Projects, to be diverted for their own personal benefit.

20. Due to Ms. Emami's and/or Mr. Emami's misappropriation and embezzlement of Delmac's assets, including the Bonded Proceeds, Delmac failed to pay its laborers and materialmen and defaulted on the Bonded Projects resulting in Great American receiving Claims and making payments pursuant to its obligations under the Bonds.

21. Upon information and belief, Ms. Emami and/or Mr. Emami used the Bonded Proceeds to pay for expenses that were not expenses associated with the Bonded Projects.

22. Beginning in November 2011, and continuing thereafter, Great American met with Ms. Emami, and communicated by telephone, email and correspondence with

Ms. Emami, on several occasions to discuss, among other things, the receipt by Delmac, Ms. Emami and/or Mr. Emami of the Bonded Proceeds from owners of the Bonded Projects. During these meetings and communications, Ms. Emami acknowledged to Great American her understanding that the Bonded Proceeds were to be used by Delmac, Ms. Emami and/or Mr. Emami to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects. Ms. Emami's understanding of this obligation is consistent with Ms. Emami's prior practice of paying expenses incurred on Bonded Projects upon receipt of the Bonded Proceeds.

23. Further, as a part of the meetings and communications between Great American and Ms. Emami beginning in or about November 2011 and December 2011, Ms. Emami acknowledged verbally to Great American she understood that any failure on the part of Delmac and her to use the Bonded Proceeds to pay subcontractors, suppliers, and other expenses on Bonded Projects would result in default on the Bonds and would require payment by Great American pursuant to the Bonds thereby inflicting injury and damage on Great American. Ms. Emami acknowledged to Great American her understanding that she would be obligated to reimburse Great American for any damage sustained as a result of the failure to use the Bonded Proceeds for their intended purpose.

24. Unbeknownst to Great American, beginning in January 2011, prior to these meetings, and continuing through May 2012, Ms. Emami and/or Mr. Emami repeatedly diverted Bonded Proceeds from Delmac for their own personal benefit.

25. Despite Ms. Emami acknowledging and agreeing to use the Bonded Proceeds to pay subcontractors, suppliers, and other expenses on Bonded Projects, and despite Ms. Emami acknowledging her understanding of the ramifications and damage that would occur to Great American if the Bonded Proceeds were not used for their intended purpose, Ms. Emami and/or Mr. Emami misappropriated and embezzled Delmac's assets including the Bonded Proceeds, failed to pay Delmac's subcontractors, laborers and materialmen and defaulted on the Bonded Projects, resulting in the losses suffered by Great American.

26. Great American is informed and believes that Ms. Emami used the Bonded Proceeds to pay for expenses that were not expenses associated with the Bonded Projects. Based on a review of bank records of Delmac, Great American is informed and believes that Ms. Emami and/or Mr. Emami, beginning in January 2011, made numerous withdrawals and transfers, to themselves, of at least $1,800,000.00 of the Bonded Proceeds. Additional withdrawals and transfers by Ms. Emami and/or Mr. Emami demonstrate that approximately $3,200,000.00 in Bonded Proceeds was used to pay expenses that were not related to the Bonded Projects.

27. In or about April 2012 Delmac, at the direction of Ms. Emami and/or Mr. Emami, issued Letters of Direction to obligees under the Bonds directing the obligees to direct future payments on the Bonded Projects to Great American for purposes of paying expenses on the Bonded Projects. Delmac then ceased operations in May 2012

28. Based on a review of the bank records of Delmac, Ms. Emami and Mr. Emami, Great American is informed and believes that, after the Letters of Direction were mailed to the obligees, Delmac received payment from certain obligees and, rather than forwarding the payment to Great American or using the payment for expenses on the Bonded Projects, Ms. Emami and/or Mr. Emami withdrew and transferred such Bonded Proceeds to themselves and used the Bonded Proceeds to pay expenses that were not related to the Bonded Projects.

## FIRST CAUSE OF ACTION

**(11 U.S.C. § 523(a)(4))**

29. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-28 above as though fully set forth herein.

30. Both Ms. Emami and Mr. Emami executed the Indemnity Agreement and owed duties to Great American thereunder, including the duty to indemnify and hold Great American harmless for all losses and expenses incurred as a consequence of having issued surety bonds on behalf of Delmac.

31. Ms. Emami and Mr. Emami were officers and the sole shareholders of

7

Delmac, were extremely active in Delmac, and controlled the day-to-day activities of Delmac. Ms. Emami and Mr. Emami had sole and exclusive control of all funds received by Delmac and all funds paid out by Delmac, including the Bonded Proceeds.

32. As set forth above, in meetings and communications between Great American and Ms. Emami, Ms. Emami acknowledged to Great American her understanding of the purpose and intent of the Bonded Proceeds, as well as the damage that would be sustained by Great American if the Bonded Proceeds were not used to pay to pay subcontractors, suppliers, and other expenses on Bonded Projects. Ms. Emami's acknowledgement was consistent with her prior custom and practice of using the Bonded Proceeds to pay expenses on Bonded Projects.

33. Ms. Emami acknowledged and agreed that the purpose of the Bonded Proceeds was to pay subcontractors, suppliers, and other expenses on Bonded Projects. Despite Ms. Emami's acknowledgment and agreement to properly use the Bonded Proceeds, and despite her prior custom and practice of using the Bonded Proceeds to pay expenses on Bonded Projects, based on a review of bank records of Delmac, Great American is informed and believes that Ms. Emami and/or Mr. Emami, beginning in or about January 2011, and continuing thereafter, made numerous withdrawals and transfers, to themselves, of at least $1,800,000.00 of the Bonded Proceeds. Additional withdrawals and transfers by Ms. Emami and/or Mr. Emami demonstrate that approximately $3,200,000.00 in Bonded Proceeds was used to pay expenses that were not related to the Bonded Projects.

34. Upon information and belief, Ms. Emami, with the intent to defraud Great American and other creditors of Delmac, embezzled assets of Delmac, including but not limited to, the Bonded Proceeds, and used these assets for purposes other than paying expenses related to the Bonded Projects, including matters benefitting Ms. Emami personally.

35. Upon information and belief, and in the alternative, Ms. Emami, with the intent to convert such assets, obtained assets of Delmac, including but not limited to the

Bonded Proceeds, through larceny, and used the assets for purposes other than paying expenses related to the Bonded Projects including matters benefitting Ms. Emami personally.

36. Both Ms. Emami and Mr. Emami owed fiduciary duties to Delmac and were fiduciaries of Delmac.

37. Upon information and belief, and in the alternative, while acting in a fiduciary capacity, Ms. Emami obtained assets of Delmac, including but not limited to the Bonded Proceeds, by defalcation, and used the Bonded Proceeds for purposes other than paying expenses related to the Bonded Projects, including matters benefiting Ms. Emami personally.

38. Upon information and belief, Ms. Emami and/or Mr. Emami directed Delmac to not properly use the Bonded Proceeds and failed to pay Delmac's subcontractors and suppliers with the Bonded Proceeds.

39. The Bonded Proceeds should have been used to pay Delmac's subcontractors and suppliers on the applicable Bonded Projects.

40. Ms. Emami's and Mr. Emami's directing Delmac to not use the Bonded Proceeds for Bonded Project expenses, but instead to use the Bonded Proceeds for other matters, constitutes a defalcation while acting in a fiduciary capacity.

41. Ms. Emami and Mr. Emami damaged Great American by improperly using the Bonded Proceeds for purposes other than paying expenses related to the applicable Bonded Projects.

42. Upon information and belief, the diversion of Delmac's assets as alleged herein, were caused by the actions of both Ms. Emami and Mr. Emami.

43. As a direct and proximate cause of Ms. Emami's defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny, Ms. Emami is liable to Great American for damages in the amount of $6,254,130.45, as set forth in the Summary Judgment Order, plus interest thereon at the maximum legal rate.

9

44. Pursuant to 11 U.S.C. § 523(a)(4) Ms. Emami should be denied a discharge of the debt she owes to Great American.

## SECOND CAUSE OF ACTION

### (11 U.S.C. § 523(a)(6))

45. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-44 above as though fully set forth herein.

46. On or about April 30, 2011, Ms. Emami provided Great American with a personal financial statement identifying and representing the amount of real property owned. The financial statement identified four separate properties, totaling a market value of $4,220,000.00, encumbered by mortgages totaling $1,302,000.00 ("Financial Statement"). Ms. Emami presented this Financial Statement to Great American with the intent that Great American rely on the representations made in the financial statement. A true and correct copy of the Financial Statement is attached hereto as Exhibit "3."

47. In reliance on and pursuant to the representations of the Financial Statement, Great American did and continued to issue surety bonds on behalf of Delmac with the assurance that the Indemnitors, and Ms. Emami in particular, held substantial collateral.

48. Upon information and belief, the Financial Statement represented that Ms. Emami and/or Mr. Emami owned the real property identified therein (the "Property"). Ms. Emami has failed to list the Property or otherwise account for same in the Declaration Concerning Debtor's Schedules, Statement of Affairs.

49. Within one year of filing her petition for bankruptcy, Ms. Emami caused the Property listed in the Financial Statement to be transferred.

50. Upon information and belief, Ms. Emami transferred the Property for substantially less than reasonably equivalent value in an attempt to hinder, defraud, or delay creditors, such as Great American.

51. Upon information and belief, Ms. Emami transferred the Property for substantially less than reasonably equivalent value, which rendered her insolvent, and unable to conduct business and/or pay her debts.

52. Upon information and belief, Ms. Emami's transfer of the Property for substantially less than reasonably equivalent value, was for the sole purpose of defrauding creditors, including Great American.

53. As set forth above, in meetings and communications between Great American and Ms. Emami, Ms. Emami acknowledged and agreed that the purpose of the Bonded Proceeds was to pay subcontractors, suppliers, and other expenses on Bonded Projects, and acknowledged her understanding of the damage that would be sustained by Great American if the Bonded Proceeds were not properly used. Ms. Emami's acknowledgement was consistent with her prior custom and practice of using the Bonded Proceeds to pay expenses on Bonded Projects.

54. Based on a review of bank records of Delmac, Ms. Emami and Mr. Emami, beginning in or about January 2011, and continuing thereafter, Great American is informed and believes that Ms. Emami and/or Mr. Emami made numerous withdrawals and transfers, to themselves, of at least $1,800,000.00 of the Bonded Proceeds. Additional withdrawals and transfers by Ms. Emami and/or Mr. Emami demonstrate that approximately $3,200,000.00 in Bonded Proceeds was used to pay expenses that were not related to the Bonded Projects.

55. In light of Ms. Emami's agreement to properly use the Bonded Proceeds to pay subcontractors, suppliers, and other expenses on Bonded Projects, and acknowledgment to Great American of the ramifications and damages that would be sustained by Great American if the Bonded Proceeds were not used to pay subcontractors, suppliers, and other expenses on Bonded Projects, Ms. Emami's withdrawal and transfer of the Bonded Proceeds to herself, as well as her use of the Bonded Proceeds to pay expenses not related to the Bonded Projects, was willful, malicious, and done with the specific intent to cause injury and damage to Great American.

56. Upon information and belief, Ms. Emami willfully and maliciously injured Great American's property by the breach of fiduciary duties described in the preceding paragraphs, and by fraudulently transferring assets, rendering her insolvent, to shield such

assets from the bankruptcy estates of Ms. Emami, Mr. Emami and/or Delmac, and to defraud creditors such as Great American.

57. Pursuant to 11 U.S.C. § 523(a)(6) Ms. Emami should be denied a discharge of the debt she owes to Great American.

## THIRD CAUSE OF ACTION

### (11 U.S.C. § 523(a)(2)(A))

58. Great American realleges and incorporates by reference those allegations contained in paragraphs 1-57 above as though fully set forth herein.

59. Beginning in November 2011, and continuing thereafter, Great American met with Ms. Emami, and communicated by telephone, email and correspondence with Ms. Emami on numerous occasions to discuss, among other things, the receipt by Delmac of the Bonded Proceeds from obligees on the Bonded Projects.

60. During these meetings and communications, Ms. Emami falsely represented to Great American that she agreed to properly use the Bonded Proceeds to pay subcontractors, suppliers, and other expenses on Bonded Projects.

61. Additionally, during these meetings and communications, Ms. Emami falsely represented that she agreed to hold the Bonded Proceeds in trust.

62. Great American reasonably relied on Ms. Emami's representation that she agreed to properly use the Bonded Proceeds to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects.

63. Great American reasonably relied on Ms. Emami's representation that she agreed to hold the Bonded Proceeds in trust.

64. Great American is informed and believes that Ms. Emami's representations were false because she and Mr. Emami had no intention to properly use the Bonded Proceeds to pay subcontractors, suppliers, and other expenses on Bonded Projects, or to hold the Bonded Proceeds in trust. In fact, unbeknownst to Great American, beginning in January 2011, several months before the representations were made, and continuing through May 2012, Ms. Emami and/or Mr. Emami repeatedly diverted Bonded Proceeds

from Delmac for their own personal benefit.

65. Based on a review of bank records of Delmac, Ms. Emami and/or Mr. Emami, beginning in or about January 2011, and continuing after Ms. Emami's representation that the Bonded Proceeds would be used to pay subcontractors, suppliers, and other expenses on Bonded Projects, Great American is informed and believes that the Emamis made numerous withdrawals and transfers, to themselves, of at least $1,800,000.00 of the Bonded Proceeds. Additional withdrawals and transfers Ms. Emami and/or Mr. Emami demonstrate that approximately $3,200,000.00 in Bonded Proceeds was used to pay expenses that were not related to the Bonded Projects.

66. Had Ms. Emami truthfully told Great American that the Bonded Proceeds were not going to be used to pay subcontractors, suppliers, and other expenses on Bonded Projects, Great American would not have allowed Delmac, Ms. Emami and/or Mr. Emami to take possession of and/or control the Bonded Proceeds. Great American could have, and would have, taken immediate steps to protect and preserve its rights in and to the Bonded Proceeds, by, among other things, sending "Hold Funds" letters to bond obligees directing the obligees to not issue any further payment to Delmac so that the Bonded Proceeds would be preserved for Great American's benefit so that Great American could use them to pay subcontractors, suppliers, and other expenses on Bonded Projects.

67. Upon information and belief, Ms. Emami and/or Mr. Emami made a knowing and willful decision to conspire to use the Bonded Proceeds for their personal use and other non-Bonded Project uses.

68. Ms. Emami's representations that she agreed to properly use the Bonded Proceeds to pay expenses incurred on Bonded Projects, including payment of subcontractors and suppliers on the Bonded Projects, and agreed to hold the Bonded Proceeds in trust, constitutes false pretenses and/or false representations, which Ms. Emami knew to be false at the time and/or which Ms. Emami made with reckless disregard as to their truth or falsity.

69. Pursuant to 11 U.S.C. § 523(a)(2)(A) Ms. Emami should be denied a discharge of the debt she owes to Great American.

### **PRAYER**

A. Wherefore, Great American prays for judgment as follows:

B. For a declaration and determination that the obligation of Great American is non-dischargeable under 11 U.S.C. §§ 523(a)(2), (4) and/or (6);

C. That a nondischargeable Judgment be issued in favor of Great American and against Ms. Emami for the amount of the debt owed pursuant to the District Court's Summary Judgment Order in the amount of $6,254,130.45, together with interest thereon at the maximum legal rate.

D. For reasonable costs and attorney's fees;

E. For such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 16th day of June, 2015.

**LANGLEY LLP**

By: */s/ Robert J. Berens*
    Robert J. Berens
    Adam D. Melton
    *Attorneys for Great American Insurance Co.*

# CERTIFICATE OF MAILING

I HEREBY CERTIFY that on the 16th day of June, 2015, I served a copy of the above and foregoing **GREAT AMERICAN INSURANCE COMPANY'S SECOND AMENDED COMPLAINT AGAINST VICKI EMAMI TO DENY DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), (a)(4) AND (a)(6)** the above captioned matter by e-file transmission. The foregoing was filed electronically with the United States Bankruptcy Court via the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Liss M. Olivares*
Liss M. Olivares
An Employee of Langley LLP