


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: Ramin Emami, Debtor | Case No.: 2:13-bk-32130-ER<br>Adv. Nos.: 2:13-ap-02149-ER and 2:14-ap-01172-VZ [consolidated cases] |
| **[Consolidated Cases]**<br>Great American Ins. Co.,<br>Plaintiff<br>v.<br>Ramin Emami,<br>Defendant | **MEMORANDUM OF DECISION OVERRULING OPPOSITION TO ENTRY OF DEFAULT JUDGMENT** |
| Great American Ins. Co.,<br>Plaintiff<br>v.<br>Vicki Emami,<br>Defendant | [No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

On May 26, 2016, the Court entered an Order Granting Motion for Sanctions Pursuant to Rule 37, Federal Rules of Civil Procedure ("Sanctions Order"). Doc. No. 122. The Sanctions Order provides that default judgment will be entered against Ramin and Vicki Emami ("Defendants") as a discovery sanction. On July 28, 2016, Great American Insurance Company

("Great American") submitted a proposed default judgment ("Proposed Judgment").[1] On July 8, 2016, Ramin Emami submitted a declaration in opposition to entry of the Proposed Judgment. For the reasons set forth below, the Court overrules Emami's opposition to entry of the Proposed Judgment.

As the Court explained in its Final Ruling Granting Plaintiff's Motion for Sanctions [Doc. No. 118], the Sanctions Order was based upon Defendants' failure to comply with Court's previous order requiring the Defendants to respond to Plaintiff's Requests for Production. The Court found that Defendants had failed to respond to interrogatories regarding the reasons for payments that the Defendants had made, a particularly glaring omission given that a key issue in the litigation is whether Defendants embezzled and misappropriated funds:

> The Defendants' failure to produce a single document in response to Plaintiff's Requests for Production, combined with the Defendants' failure to answer the key question in Plaintiff's interrogatories—the reason for the payments—show that the noncompliance is the result of willfulness and bad faith. The fact that Defendants supplied a detailed list of payments, yet failed to indicate the reason for those payments, is particularly emblematic of Defendants' bad faith. The key issue in this litigation is whether Defendants misappropriated funds. Defendants have failed to respond to discovery with respect to this central issue. It defies belief that Defendants knew the payment amounts but did not know the purpose for a single payment. Defendants' non-responsiveness can only be explained as deliberate and willful evasion.

Final Ruling Granting Plaintiff's Motion for Sanctions at 13.

As a result of Defendants' failure to comply with their discovery obligations, the Court found that case-dispositive sanctions were appropriate:

> Defendants have failed to comply with the Court's Discovery Order [requiring Defendants to respond to written discovery]. Defendants have failed to produce a single document in response to Plaintiff's Requests for Production. In addition, Defendants' Supplemental Responses to the interrogatories are inadequate. First, the Supplemental Responses do not identify the reason or purpose for the various payments that were made. The omission is glaring. In this action, Plaintiff seeks to establish that Defendants misappropriated bonded proceeds to their own use. The reason or purpose for the payments made by Defendants in the operation of their construction business are facts that are core to the action. Second, Vicki Emami failed to provide any response to Interrogatory No. 8. Third, Defendants continued to respond "I believe the answer is none" with respect to certain interrogatories. The Court found that this response was inadequate in its ruling on Plaintiff's previous discovery motion:
>
> > Defendants' response "I believe the answer is none," further qualified by statements that necessary information to form an answer is in the possession of Hovannissian, is not appropriate. Stating an answer upon belief, when additional information that could furnish a more thorough response is available, constitutes an "evasive or incomplete disclosure" amounting to a failure to respond under Rule 37(a)(4). Defendants must supply a complete answer to Interrogatory 4.
>
> Ruling Requiring Defendants to Respond to Discovery at 6 [Doc. No. 94].

[1] The Court granted Great American's motion for an extension of time to submit the Proposed Judgment. Doc. No. 124.

Although Defendants have deleted the qualification that they are unable to respond because necessary information is in the possession of their bookkeeper Hovannissian, they have substituted a similar qualification providing that the responses are based upon an incomplete investigation. The Court re-emphasizes its previous finding that an inconclusive response such as "I believe the answer is none," further qualified by a statement that the response is based upon an incomplete investigation, is inadequate. As the Court previously found, stating an answer upon belief, when additional information that could furnish a more thorough response is available, constitutes an "evasive or incomplete disclosure" amounting to a failure to respond under Rule 37(a)(4).

Defendants' statement that they "assume no obligation to voluntarily supplement" or amend responses that are admittedly based upon an incomplete investigation contravenes the requirements of the Federal Rules of Civil Procedure. Civil Rule 26(e) provides that a party who has responded to an interrogatory or request for production "must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."

Defendants' excuses for their failures to comply are inadequate. With respect to Ramin Emami's father's illness, the Court understands that appropriate accommodations must be afforded to parties experiencing family emergencies. However, more than four months have elapsed since Defendants' counsel notified Plaintiff of Ramin Emami's father's medical issues. In that time period, Defendants have done little to comply with their discovery obligations. They have not produced any documents, have not moved the Court for an extension of the discovery cutoff deadline, and have not sought an extension of the deadline set forth in the Discovery Order. The Court finds that the real reason for Defendants' lack of responsiveness is not a legitimate family emergency but rather a continuing attempt to delay the litigation of this action.

Nor is the alleged non-cooperation of Defendants' bookkeeper, Art Hovannissian, a sufficient excuse. Defendants were able to provide a lengthy list of financial transactions in response to various interrogatories, suggesting that they do have access to at least some of the financial documents demanded in the Requests for Production. The Court finds it implausible that Defendants were able to provide a lengthy list of payments made yet simultaneously unable to list the reason for any of those payments.

Further, in its ruling on Plaintiff's previous discovery motion, the Court made it clear that the alleged non-cooperation of Hovannissian could not absolve Defendants from complying with their discovery obligations:

> Nor is the Court persuaded by Defendants' contention that the necessary records are in the sole possession of their uncooperative bookkeeper Hovannissian. "In answering interrogatories, a party is charged with knowledge of what its agents know." Wright & Miller, Federal Practice and Procedure, §2177 (3d ed.). Defendants cannot avoid their discovery obligations by claiming a lack of cooperation from their agent Hovannissian. If the Court were to validate such an excuse, discovery in civil litigation would grind to a halt. Further, it does not appear to the Court that Defendants have diligently sought to enlist Hovannissian's cooperation. For example, Defendants have not made any written demands upon Hovannissian. In the Court's view, Defendants' claims regarding Hovannissian's non-cooperation are nothing more than a delaying tactic to enable them to avoid meeting their discovery obligations.

> Ruling Requiring Defendants to Respond to Discovery [Doc. No. 94].
>
> The Court finds that Defendants' failure to comply with the Discovery Order warrants entry of a default judgment against the Defendants. Before entering a case-dispositive sanction such as a default judgment, the Court must make certain findings:
>
> > We have constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions.
>
> *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).
>
> The Court must also find that the "noncompliance involved willfulness, fault, or bad faith" before entering a case-dispositive sanction. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012).
>
> Plaintiff first served written discovery upon the Defendants on January 3, 2015. Sixteen months later, Defendants have still failed to produce a single document in response to Plaintiff's Requests for Production, and have failed to adequately answer many of Plaintiff's interrogatories. Defendants' dilatory conduct has resulted in multiple delays in this litigation and has interfered with the Court's ability to manage its docket.
>
> The Court finds that lesser sanctions would not effectively address Defendants' continuing failure to comply with their discovery obligations. In its ruling upon Plaintiff's previous discovery motion, the Court clearly informed Defendants of the inadequacy of their discovery responses. The Court warned Defendants that alleged non-cooperation of their bookkeeper, Art Hovannissian, was an insufficient excuse—yet Defendants continue to fall back upon that excuse. The Court further advised Defendants that the response "I believe the answer is none" was inadequate, given that the information necessary to supply a more complete and definitive response was in Defendants' possession. Yet the Supplemental Responses maintained that answer to several interrogatories, along with the admission that the answer was based upon an incomplete investigation. Even more disturbing, Defendants stated that they would not supplement their discovery responses in light of new information, even though the Civil Rules expressly impose an obligation to supplement responses. That is, Defendants were announcing their intention not to comply with the Civil Rules.
>
> In the Discovery Order, the Court warned the Defendants that failure to comply could result in the imposition of additional sanctions. Defendants did not seek an extension of the deadline set forth in the Discovery Order. Only when Plaintiff filed a Motion for Sanctions did the Defendants belatedly make additional excuses for their failures to comply with their discovery obligations. In view of this past history, the Court finds that lesser sanctions would be inadequate to address Defendants' dilatory conduct.

Final Ruling Granting Plaintiff's Motion for Sanctions at 9–13.

Plaintiff submitted the Declaration of Brandon Tabor ("Tabor Declaration") [Doc. No. 127] in support of its request for damages in the amount of $7,789,310.18. Defendant Ramin Emami filed a declaration opposing the requested damages ("Emami Declaration") [Doc. No. 128].

The well-pleaded allegations of the Complaint are taken as a true as a result of the Sanctions Order. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Here, the well-pleaded allegations of the Complaint that must be taken as true include the following:

1) Plaintiff Great American provided construction surety bonds (collectively, the "Bonds") in connection with construction projects (the "Bonded Projects") where Delmac Construction & Development Inc. ("Delmac") was the general contractor. By virtue of issuing the Bonds, Great American acquired an equitable lien against all contract proceeds that would be paid to Delmac from the Bonded Projects (such contract proceeds, the "Bonded Proceeds").
2) Defendants were officers and shareholders of Delmac. An indemnity agreement (the "Indemnity Agreement") between Great American and Defendants required the Defendants to indemnify Great American against any losses Great American sustained in connection with the Bonded Projects. After Delmac defaulted on several of the Bonded Projects, Great American sustained losses.
3) Great American's losses were caused in part by Defendants' intentional mismanagement of Delmac—including the misappropriation and embezzlement of Delmac's assets. For example, instead of using the Bonded Proceeds to pay expenses associated with the Bonded Projects, Defendants diverted at least $1.8 million of the Bonded Proceeds to themselves. In addition, approximately $3.2 million in Bonded Proceeds were used by Defendants to pay expenses that were not related to the Bonded Projects.

Complaint [Doc. Nos. 55–56] at ¶¶ 2–26.

Emami's declaration, submitting in opposition to Great American's request for damages, alleges that in the first quarter of 2012, Great American sent letters to clients who had commissioned the Bonded Projects, instructing them to pay Great American rather than Delmac. As a result, Emami alleges, Delmac could not meet its payroll and was unable to complete the Bonded Projects. But for the letters sent by Great American, Emami asserts, Delmac would have been able to complete the Bonded Projects within their original budgets and Great American would not have been damaged. Emami states that the documents necessary to substantiate these allegations are held by Great American, and requests that he be allowed to conduct discovery on Great American to obtain the documents. Emami further requests an evidentiary hearing to determine damages.

Emami's objections are overruled and his request for an evidentiary hearing is denied. Emami's allegations regarding Great American's failure to mitigate damages are an attempt to litigate an affirmative defense. The right to litigate an affirmative defense was cut off by the default imposed by the Sanctions Order. *See Horton v. Sierra Conservation Ctr.*, No. 1:09CV01441-AWI-SMS, 2010 WL 743849, at *1 (E.D. Cal. Mar. 1, 2010), *report and recommendation adopted,* No. 1:09CV01441AWISMS, 2010 WL 1267743 (E.D. Cal. Mar. 31, 2010) ("Entry of default against a defendant cuts off that defendant's right to appear in the action or to present evidence."). Permitting Defendants to litigate this affirmative defense would render the Sanctions Order toothless, as it would reopen for litigation issues at the core of this action. Assuming *arguendo* that Emami's allegations are true, determining whether Great American was justified in demanding that proceeds of the Bonded Projects be paid to Great American instead of Delmac would reintroduce the issue of whether Delmac had defaulted on the Bonded Projects at the time Great American made the demand. In turn, this would reopen the issue of whether Defendants caused Delmac's default by misappropriating proceeds of the Bonded Projects. In

short, the Emami Declaration is a backdoor attempt to continue to litigate this matter as though the Sanctions Order had never been issued.

The Court has reviewed the Tabor Declaration and finds that it establishes that Great American sustained damages in the amount of $7,789,310.18. However, the damages demanded in the Complaint were only $6,254,130.45. Damages awarded pursuant to a default judgment cannot exceed the amount demanded in the Complaint. *See* Civil Rule 54(b) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Accordingly, damages will be limited to $6,254,130.45.

The Court finds that several other minor alterations to Great American's Proposed Judgment [Doc. No. 130] are necessary. The Proposed Judgment contains a finding that Defendants committed larceny within the meaning of §523(a)(4) by misappropriating the assets of Delmac to pay personal expenses, rather than using those assets to pay expenses related to the Bonded Projects. Proposed Judgment at ¶18.

Within the context of §523(a)(4), "larceny" means the "'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010). "As distinguished from embezzlement, the original taking of the property must be unlawful." *Collier on Bankruptcy* ¶ 523.10[2] (16th ed. rev'd 2015). Parties who are in lawful possession of property but then unlawfully misappropriate the property have not committed larceny within the meaning of §523(a)(4). Here, the Complaint contains no allegations showing that Defendants' initial possession of Delmac's assets was unlawful. Complaint at ¶4. Quite the opposite—the Complaint alleges that Defendants were officers and shareholders of Delmac, indicating that they lawfully exercised custody over Delmac's assets. Accordingly, Defendants' subsequent unlawful misappropriation of the Delmac's assets does not constitute larceny as that term is defined in §523(a)(4).

In the Proposed Judgment, Great American seeks interest a the rate of 10% per year. Pursuant to 28 U.S.C. §1961, federal judgments bear interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The request for interest at 10% per year is denied. The judgment will bear interest at the applicable treasury rate.

Finally, the Proposed Judgment is not set forth in a separate document as required by Civil Rule 58(a). The Court adopts the findings in the Proposed Judgment (with the qualifications set forth above), but will enter those findings in a separate Order Setting Forth Findings in Support of Entry of Default Judgment. This is necessary to satisfy the Rule 58(a)'s separate document requirement, thereby avoiding disputes concerning the date of entry of the judgment.

The Court will enter judgment in favor of Great American consistent with this Memorandum of Decision.

###

Date: July 18, 2016

Ernest M. Robles
United States Bankruptcy Judge